I'll call the last case on the docket, case number 21, appeal number 21-1069, Cruz v. Farmers Insurance. Good morning, may I please? My name is Ralph Lamar and I've been before you before today. You look familiar. I represent Mr. Cruz in his case against Farmers Insurance and it's for a violation of 42 U.S.C. 1981 based upon race discrimination. In the course of his case at summary judgment he presented both direct and circumstantial evidence. Given that the facts determined on a circumstantial case they're so important and how the the court made its mistake I'm basically going to rely primarily on the circumstantial evidence and leave the direct evidence to the brief unless the court has questions for me on that matter. I do actually but I can save them if you'd like. Okay, let me go through the facts fairly quickly because the timing and who knew what when is so important in proving that the stereotype of dark-skinned men being violent is something that a jury could find is what led farmers to make this decision. Mike Cruz had been an agent for them for 30 plus years at the time this happened. We're familiar with the facts. Okay, all right your honor. The fact that both Ms. Kautz spoke to Mr. Elsberry in depth about this issue about the email the offending email before he sent the February 1st memo saying the matter is over and nothing more will happen makes it very hard for her to claim that she actually believed Mr. Cruz was the author of the email. Now that's farmer's claim is that she and Mr. Brooks didn't learn about this until later but there's also evidence in the record that showed that Mr. Brooks knew that Mr. Sales responded to this email. He knew that Candace Diekman was the person who had made the statement. Does it matter if it comes from his email and isn't that the ultimate reason that they terminated him? Your honor that reason's never been put in writing and because the recommendation provision J isn't that floating around in here somewhere? It is your honor and it raises a good point. The supreme court has held that just because a person has violated a provision in a contract or has done something that would constitute a violation of a workplace rule doesn't necessarily mean that they can't claim that the reason for the ultimate action was a but for their race. And I put that in my brief the legal authority for that. So what's important is that Ms. Kautz in her email to Mr. Smith at corporate headquarters did not say there's some confusion over whether Ms. Diekman sent this and we think Mr. Cruz should be his agency contract should be revoked because he let his wife use the email. Her email to Mr. Anderson was completely wrong and I will read it because although Judge Kelly said you're familiar with the facts I think it's very important because this didn't happen. She says we believe it is in the best interest of farmers to terminate our contract as Michael expressed physical harm to the customer. I carry and if I feel threatened I will blow a hole in him the size of Uganda. Now the cat's paw argument that plaintiff raised at summary judgment was never ruled upon by the court. In fact it wasn't responded to by defendants in this case and the an organization can be held responsible if basically they rely on false information that has been fed them by people who have an agenda and in order to prove pretext weaknesses implausibilities inconsistencies incoherencies or contradictions one of the things I pointed out on a regular basis in the fact section both at summary judgment and to this court is that no one made an effort to say to Mr. Anderson before he decided whether he was going to revoke the contract that oh Ms. Coutts email was completely false and they all knew it Mr. Ellsbury Mr. Brooks they both knew that the material in that email was false and they did nothing to disavow Mr. Anderson of that falsity. So that's the core of the case but there's more and that comes down to Mr. Snyder's comment to Mr. Cruz in July. They had a conversation Mr. Cruz was upset about the fact that in spite of his efforts to get the company to put it in writing the fact basis not what he had purportedly violated in the contract but the factual reason why they claimed they were doing this he talks to Mr. Snyder and Mr. Snyder says to him hey it's just corporate came to the conclusion that you're the one who wrote that email. Well it's not something that's pie in the sky it's not hypothetical it's not speculative. Ms. Deakman wrote the email and concern was expressed to her and for her safety by Mr. Sayles when it happened but when Ms. Coutts and Mr. Brooks decided that they wanted to revisit this which by the way had never happened in Mr. Sayles experience he testified he'd never seen this happen and given that there was evidence in the record that they actually knew the real facts when they turned around and then sent a false email to Mr. Anderson saying we have to terminate this contract because Michael expressed physical harm to the customer a jury could say it's because they were worried about and and we'll get to the direct evidence part the crazy brown man running around the office with a gun um we all know if you don't have that if you don't have that if if we agree with the district court that that's that double hearsay can't come in how do you how do you connect it to to race well i was just about to your honor um first of all there's no requirement that there be direct evidence of animus on the basis of race i understand that i'm saying okay well what else do you have well stereotype stereotyping is based upon generalities mr cruz is hispanic how can farmers with a straight face say that they got it so wrong when they knew that it was wrong they knew that mr cruz hadn't made these threats if you want to call him what else if if he didn't make him his wife did on his email and he he's her supervisor i mean what does that matter no it doesn't and i'll tell you why here's more of the evidence that shows that their justification for it is full of holes they claim there in fact there's a dispute even internally within farmers that mr ellsbury claims he just changed his mind there wasn't any pressure he wasn't told he had to he just changed his mind but brooks and kautz basically say oh we told him he was going to change his mind now that's an inconsistency that on its own is enough but it goes further with regard to um this uh they had said that it wasn't enough to terminate his agreement when they knew she had used his email in february so a change of approach if if her sending it from his email was the legitimate basis and was the actual basis and they were claiming we just learned about this and we reserved the right to change it i wouldn't be here they lied about it so if they're lying about it it's because they know that her sending it from the uh had already been approved by mr ellsbury and in fact there's a fact in the record before he sent out that february 1st memo that said this is going to be the end he spoke in depth with ms kautz about him sending the the memo and that this is his decision so why 10 weeks later is it suddenly now worthy of terminating a contract on behalf and then prior to that passage of 10 weeks did did all of you did the decider have knowledge of the content of the email i'm sorry your honor didn't hear who you were referring to that i know did the persons who were deciding your client's fate did they have knowledge of the content of the email well that's why we go to the decider versus the people who made the recommendation the people who made the recommendation saw the email they knew all the facts they misrepresented the facts to the decider and that's why when the disc when the decider said initially okay this is not a big deal we're going to move on did the decider know the content well yes your honor and yes yes the decider did yes mr ellsbury who wrote the february 1st memo knew the content knew what had happened he was not the one who made the decision to revoke the agency agreement he and ms kautz were part of the group that sent the recommendation to corporate headquarters so the decider didn't know he didn't and that was the part where we bring up the catapult with eeoc versus bti um i'd be happy to answer the questions about the direct evidence i see that i do have some time left and i'd also like to try and save some time from a rebuttal it's my understanding from from your briefing both both sides briefing that if we disagree on the direct evidence with this district court if we say it's not hearsay i think you both i mean i i get the impression you're you're going to get get a trial that's correct your honor that's plaintiff's position nobody's contending it's not direct evidence or wouldn't be if it could come in i guess correct and the reason i miss ability correct and and i believe the the judge made a mistake by was a independent contractor well that's what an agent is uh you do you do make that argument and the district court didn't address it as far as i could see he didn't he didn't address whether he was an agent i didn't see that you cited any case law in support of your argument that he was an agent i didn't provide any uh case authority your honor i relied on the facts which is that he's the reporting person in between mr cruz and mr elsberry and if he's the reporting person and he i showed through the factual record that he had duties that dealt or related to it they're relying on him farmers was relying on mr sales thank you did you want to preserve the rest of your time i i would if there are no further questions currently here's their own thank you good morning judges or good afternoon may it please the court my name is jim holland with fisher phillips and i represent the defendants uh in this matter uh judge one thing that i do want to point out uh that you raised uh judge moritz on the direct evidence fees um even if this court were to disagree with the lower court and admit the double hearsay statement which i don't believe is appropriate uh the statement is still not direct evidence of discrimination never made that argument though oh but there wasn't a need to judge because yes there is if it's admissible there's a need to make it because we're at summary judgment stage now well you didn't make it you didn't make it at all well but judge it does there there is the argument was made that there is no direct evidence of discrimination but you i didn't i didn't see you actually take that statement and make any suggestion about whether it was or wasn't direct evidence and that was just argued it wasn't admissible period correct i'm saying if we don't agree with you on that what what can we do with it then other than treat it as direct evidence but it's not direct evidence of discrimination because the comment was a crazy brat we got rid of him because he's a crazy brown man running around with a gun right why isn't that direct evidence because it does not it is it does not it still requires some type of inference judge in terms of what why couldn't we make one if if the comment was we got rid of a crazy brown man which is what is alleged but judging around with again what would have been the point of saying he's a crazy brown man but judge the the reference to him being brown is no difference than the was because of the comment about having a gun so the fact that how do we know that i mean i guess i mean based on the comment itself it's not real clear and judge that's the whole reason that it's not direct evidence because it requires an inference to be made okay direct evidence would be evidence that requires no inference and so because there's an inference that would be required that's why it would end up being i didn't i did not see you make that argument anywhere in your didn't address it here because in this in this situation because you assumed you would be you would succeed on appeal or well no judge i mean i think what it was is that in in plaintiff's argument to this court i believe plaintiff recognized that that comment is not going to be admissible by relegating it to the latter part of their brief and they addressed the prime neither here nor there for me sorry brief but judge this is a case where the facts are straightforward farmers presented six let me finish up just with that comment because i do want to ask regardless of what the whether it is or isn't direct evidence why isn't it admissible we we do have our case law that says if if an agent let's accept for a minute that he's an agent participates or is involved in the language we use is involved in the decision making process that comes under 801 d2d exception why i think there's plenty of evidence that mr sales i think that's who we're talking about here participated in the decision making process rather extensively and at farmer's request well and i that's not what the record demonstrates judge the undisputed record in this case establishes that as a district manager that mr sales was an independent contractor and did not have authority to terminate an agent's appointment agreement and that person answered that's not the question we've never required that and the district judge seemed to think that he had to actually have decision making authority and that is not what our case law says no and judge that's that's why i'm getting to the next point the other uncontroverted fact in this case is that except for trying to schedule a meeting between the plaintiff and mr elsberry in april of 2017 mr sales was not involved in either the recommendation or the actual decision he was specifically asked he was specifically asked to investigate the incident that ultimately results in his termination of his agency he reported back judge he heard about it he was asked to investigate the situation involving a complaint made against mr cruz by dan french mr sales was not asked in any way to investigate anything dealing with the uganda email and he was asked to be the person who conveyed the information and spoke with cruz and deepman about the fact that the agency was being terminated after 30 years that is not what the record is judge the record is is that mr sales was asked by mr elsberry to contact mr cruz and arrange for a meeting that was all he was asked to do is that is that not in dispute at all that is not in dispute so he when he was asked to contact him and arrange for a meeting he just gratuitously offered that his agency was going to be terminated and we dispute that the crazy understand i understand yes but no mr sales was given instructions by mr elsberry to contact plaintiff and to simply say tell him that i want to meet with him about this comment that was made in this email that was the extent that is in the record did mr sales testify to that also mr sales did and this is in the joint appendix at 223 and 224 as well as 172 and 173 pages 183 and pages 203 mr sales was specifically asked by mr lamar what he was told to tell mr sales and what mr sale or excuse me mr sales was at was was asked what were you told to tell mr cruz the plaintiff and mr sales i was told to try and set up a meeting that was it that is undisputed in the record and that was actually statement of fact 43 in the summary judgment filings that was not disputed so in this situation and he there was no testimony that he actually made any recommendation or was asked for a recommendation as to mr cruz's agency there is not any any any mention in the record of that nor could there be because that was not part of mr sales's job as an independent contractor well he said he testified he had the authority to make recommendations about termination of agency he specifically testified about that he he certainly could make a recommendation he made no such recommendation here well recommendation would be involved in the process well if it was in this particular situation but in this situation that's i'm saying you're talking about two different things though you know he did testify that is with is within his job functions to make or his position at least to make these recommendations correct judge and in this situation that the record also is is that he was not asked to make any such recommendation in this case thank you and so as a result of that judge we believe that the statement uh under the johnson and jeremy low case we do believe that it is inadmissible hearsay and that the district court properly excluded it as such but even if it is allowed even if that comment is allowed to come in while it might end up getting past the direct evidence of discrimination i agree judge but that goes back to my comments that i was having with judge moritz earlier where this is not direct evidence because the court would still have to reach some inference because this comment could be interpreted in two different ways well if you said if you said because he's black i'm going to do x that doesn't need an inference and i don't think brown makes any is any different i i agree judge but that's not the comment here the comment here was not because he's brown we're getting rid of him the comment was we're getting rid of him because he was running around with a gun and he's a little brown guy running around with a gun and judge i think judge kelly my comment my response to that is that the comment about referring to him as brown is no difference than referring to him as man and i think it's a big okay but i believe that even if it might get you beyond the pretext issue or get you beyond the prima facie issue it doesn't get you to pretext but i do want to address a couple of things that that counsel pointed out in his in his argument and that is is that with respect to this mysterious what he what he refers to as the changing of the mind the the bottom line is is that the record is plaintiff tries to make a huge issue of this and it is true that he changed his mind but what the plaintiff would have the court do is ignore the reason for the change of mind it is uncontroverted that counts and brooks who are the decision makers here in forwarding this to home office they did not know about the uganda statement when mr elsberry originally sent his not going to take any action memo on february 1st that is undisputed it is uncontroverted that they did not learn of it until march or april of 2017 that they that's that's when they first learned of it and that's when they said we need to reopen this and look into this situation and no logical inference can be drawn that this re-review was motivated by discriminatory intent in fact the change of mind actually established that that his race had nothing to do with that decision farmers knew that mr cruz was hispanic if farmers had any intent to discriminate against him because of his race why didn't farmers terminate him in january when this first came up and they learned about the french situation the fact that the agent appointment agreement was not terminated at that time and only terminated once others in management at farmers learned of the threatening uganda email clearly establishes that plaintiff's race did not factor into the decision in any way and with respect to this stereotyping argument the plaintiff's argument goes something like this farmers had no issue with the uganda email knowing that it came from plaintiff's wife after several weeks farmers then decides that it can blame the plaintiff for sending the uganda email and use that as an excuse to terminate the agreement and with this false narrative no one would dare question farmer's decision because of the stereotype that men of color according to plaintiff are prone to violent behavior but that argument simply lacks any support in the record there is nothing in the record evidencing that the persons involved in the termination of plaintiff's agent appointment agreement even knew what miss dykeman's race was and in addition to that there's absolutely no evidence that farmers created or concocted the allegation isn't that she the allegations about him that he's he's the crazy brown man i don't i don't understand what difference it makes whether they knew what her race was they knew what his was well true but the whole point of this stereotyping argument is that farmers had no problem according to plaintiff that farmers had no problem with the email knowing it came from a white person my point is is that there's nothing in the record to establish number one that she is white or that the people were willing to accept it believing that she was white because they didn't know that's the whole point judges that's why the stereotyping argument doesn't make any sense and i would also like to point out that with respect to miss counts's email to bob anderson about the reason for the termination yes there was some initial confusion at the outset as to who sent the email but it is uncontroverted as the district court found it is uncontroverted that the decision to terminate the agent appointment agreement was made knowing that plaintiff's wife miss dykeman sent the email and it was never sent to mr french either i'm sorry judge say that again he was never sent to the irate mr french correct the email was never sent to mr french absolutely there's never been any allegation that it was sent to mr french there's never been any allegation that mr french knew anything about the email the bottom line is is that the email that i'm going to blow a hole in somebody besides uganda regardless of who made that comment that is an offensive email that warrants disciplinary action and farmers made the decision that it warranted termination well i don't agree with that either say that i'm sorry judge i don't agree with that statement either in terms of who sent the email no and what he said i mean if this guy comes in and bothers me i carry you can do that in colorado and new mexico and i won't be afraid to use it that's nothing wrong with that but using bad language on the phone might very well be subject to discipline but we've got a question here about which came first well judge i think it's it's our point that it's it's defendant's position that the termination decision here as pointed out in the in as part of the record had nothing to do with the initial phone call and potentially bad language with mr french well he had already been he had already been warned once back in 2009 about using the f-word talking to me absolutely but now again with with mr french and that's what precipitated french's letter to the home office correct judge but but i want to be clear the reason that farmers terminated the contract is not because of bad language the reason that farmers terminated the contract is because he violated paragraph j of the agent appointment agreement vis-a-vis vis-a-vis the i'm going to blow a hole in somebody the size of uganda whether i thought there was a reference i thought there was a at least one prior incident that was something that was something at all that came up during the termination review board but that that was that was not something that was part of the decision to terminate and one final point and how did it come up with the decision review board as basis for termination or it was it was background evidence because mr cruise's attorney brought it up in that situation all right okay and i see that my time is up if there are any other questions i'd be happy to answer them well i've got one one question is it your position that he was terminated because his wife sent this letter in in-house uh to the one individual that then reported it on up the chain and that's the reason that is correct judge it was because of the email his wife sent thank you thank you judges mr lamar you need to unmute you're muted sorry it is a plaintiff's contention that uh defendants have waived the argument that uh the brown man the crazy brown man with a gun uh is not direct evidence however if the court does find that it isn't hearsay but it also doesn't constitute direct evidence um and that an inference needs to be made then it would be part of the circumstantial case that we want the court to consider um one one other thing that uh defense uh council said was that um both mr elsbury and mr sales said he wasn't authorized to provide the reason that's a matter of credibility at this point given the overwhelming evidence of pretext uh the witnesses for farmers are not entitled to simply say this is what happened and we wouldn't lie about such a thing and it has to stand at summary judgment um i i disputed it at summary judgment it's what i consider to be a smaller issue i don't think that smaller issue is should change the court's analysis which is why i didn't even discuss it in my opening remarks um one other point though about the change of mind that is very important if mr elsbury i'm sorry mr brooks and ms kautz truly only learned about this late and they were upset and they said look this this can't be we can't be doing this it defies logic that they would say to mr elsbury hey change your mind and we're not going to discipline you for if they honestly thought that their agent had threatened a customer with a gun and that mr elsbury in february 10 weeks earlier had slapped him on the hand and said this is the end of the matter a jury could find that's just baloney in a normal sense is it your position that somebody told someone else that this threat was made to a customer that's what ms kautz said to mr anderson in in requesting the revocation of the agency agreement she said he threatened a customer that is at fact 70 um page 16 okay now would that make any difference if they were wrong let's say that they had they had a good faith belief it was sent to the customer and they had a meeting they decided under the terms of the contract to terminate him if there was a law does it right does that result in a violation no your honor i think the law is rife with um cases where an employer has taken a step maybe based upon wrong information but where there's no cat's paw and where there's no proof that the employer knew it was wrong before making the decision or at least the recommending parties knew it was wrong so that's the big distinction right it's your position that they have to be right when they make the decision no if they are wrong but it truly is good faith and there's no evidence to suggest that they were lying they lied to mr anderson that was an outright lie claiming that mr cruz had said this so there's no good faith to begin with just from that but the next part is that on a cat's paw you don't look at what the decision maker's thinking was you look at what the decision maker was told and i see my time is up thank you your honor thank you thank you counsel both of you we appreciate your very helpful arguments and case will be submitted and counselor excused and the court will be in recess until tomorrow morning nine o'clock 8 30 8 30 is 8 30 tomorrow okay sorry there we go